Morning, Your Honor. Victor Sherman appearing on behalf of the appellant. I would like to reserve, like, three minutes for my rebuttal, if I might. All right. Thank you. Okay. In this case, Honor, about December 21, 1999, 20 boxes of documents were stolen from appellant's residence. At that time, he made a police report, and he named the two informants in this case, Havers and Muir, as being suspects in that robbery. At around the same – or that burglary – at around the same time, Mr. Havers went to the FBI and told him that he had tons of evidence against appellant, and he wanted to basically turn appellant into the FBI. At that time, the agent, Olivio, said, well, he wasn't involved in that kind of crime investigation, and turned him over to the IRS. So there was a clear admission in the latter part of 1999, December of 1999, that Mr. Havers had stolen the documents from the appellant. Well, wait a second on that. Now, I mean, we have to – obviously, when we're reviewing the motion to suppress, we've got to look at the factual findings of the district court, correct? That's clearly erroneous. All right. But what did the district court say about whether the – those boxes were stolen? Well, the district court said that – I believe the ruling was he made it twofold. One, he wasn't sure that the boxes were stolen, and even if the boxes were stolen, it was done by a private party. I think that's the way the court looked at the matter. Well, so, I mean, the district court didn't say they weren't stolen? Well, I think the district court said even if they were stolen, and – or he believed they weren't stolen. But the – Well, you've got to climb up that hill over those factual findings. So, you know, that's – I understand that, and that's why I'm referring to the transcript in which Mr. Hayhurst admitted to the agent, Olivio, that he had helped himself to the documents from defendants' residence. Now, the district court – I don't see how the district court could possibly look at those facts and say that they were not stolen. And, in fact, there was an arrest worn out for the – Hayhurst, and he was arrested, and he was prosecuted on – for stealing the But the court – the district court, in finding that the documents were not stolen, completely ignored the fact that there was testimony from Detective Olivio and Mr. Hayhurst that he had helped himself to the documents. Didn't Hayhurst have access to these documents and other documents during the course of the employment? Not the particular documents we're talking about. But he did have access to other documents within the course and scope of his employment,  He did. But the documents in question here, he said he was working as a construction worker, and that just because he's a construction worker and he has access to appellant's home doesn't mean he has the right to take documents from the appellant's home. And that's what occurred in this case. Counsel? Yes. Counsel? Let's assume for the moment that the documents were stolen. Now, the reason he stole them apparently was to try to extort some funds out of the plaintiff in this case. That's correct. So he takes these government – these documents to the government. They look at them and they see the fraud. Could they use them even if they knew they were stolen? Well, it depends, I think, a little bit on the facts. If at the time he stole the documents it was for the purpose of doing an extortion scheme, that scheme had – I think that's pretty clear. That may be clear. But by the time he went to the FBI and the IRS, he had given up any hope of extorting the appellant. At that point he just either wanted revenge or he wanted an investigation against the appellant. Well, is there any evidence in the record that the government was in any way involved with or had prior knowledge of whatever you want to call the theft or the search by Muir or Hayhurst? I don't believe that the evidence – there's evidence in the record that before the theft the government knew that he was – Well, but don't you have to – don't you have to put some evidence of that to prevail? Well, not under the case law, Your Honor. Certainly that would be one way that you could – if you could show before the theft that they knew about it. But if after the theft and before the government receives the documents they know that the documents have been stolen and they acquiesce in the theft of the documents by thereafter using the documents, then I think the government is responsible for the theft. But you have to have acquiescence or you have to – you've got to have some government action, right? I agree. And what evidence is there of that in this record? In this case, Olivio was told in December of 1999 that there were stolen documents and the documents were not turned over to the IRS until April of 2000. And during that period of time or shortly thereafter, the IRS was informed by the officer investigating the theft that there was an arrest warrant for this Hayhurst for stealing the documents. And despite that, the IRS did nothing to turn this individual in, did not call back the Monterey Police Department and say that he was in the hospital, for instance, and continued to debrief Mr. Hayhurst and continued to use the documents. So we have a situation – that's the acquiescence. And if we would permit somebody to steal documents, go to the FBI and say, hey, I've got stolen documents, and the FBI say, fine, I'm not dealing with that, then say, but you can go to the IRS and then have them go to the IRS some four months later. Before they've ever looked at the documents, the IRS know that there's a criminal complaint out against this person for stealing the documents, told by the local police department that there's an arrest warrant, don't do anything to try to turn that person in, continue to debrief that person and continue to receive documents for the next couple of months from one individual into 2002 from the other individual. I consider that acquiescence. I'd like to reserve the rest of the time for rebuttal. All right. Thank you. Thank you. Good morning. May it please the Court, Bob Gammon on behalf of the government. As indicated in our brief, the position of the government is that the district court was not clearly erroneous in making the findings that it did, that there was no government action in this particular case. Well, what did the district court find about whether they were stolen or not? I'm sorry, Your Honor? What was the district court's finding on whether the documents were stolen? The district court found that the defendant had not met any burden, the burden that it had, to prove that the documents were stolen. In fact, there was insufficient evidence. In the record, Agent Campbell testified that even though he received the documents and he had some concern that they were stolen, that in fact, after hearing from the individuals who were involved in this, he himself was not even concerned they were stolen. And I think even more significantly, from the very outset of the motion to suppress, the defendant himself, in submitting a declaration in support of the motion to suppress, never indicated that their documents were stolen. The report given to the Monterey Park Police Department dealt with a supposed burglary of the Ladera Street property. There was no indication that, in fact, the allegation by the defendant of a burglary or theft of the documents was ever substantiated. Well, if they were stolen, what relevance does that have, whether the government was the government action or acquiescence in analyzing that prong? Well, the basic principle, of course, is that unless there's government action, the Fourth Amendment is not implicated. And if, in fact, the documents were stolen, assuming that for the moment, if that initial hurdle still has not been met, that is, there was no government action, there's no indication in the law that the government cannot use those documents.  And that is, of course, judged on a case-by-case basis. How should Hayhurst's request for a reward from the IRS factor into the equation of government involvement or acquiescence? Certainly that was in the record, and the indication that he applied for the reward, but that has to be considered against his own testimony at the time of the suppression hearing, that, in fact, and also was corroborated by the declaration submitted in opposition to the motion, that he was owed money by the defendant, and that his initial concern, he testified, was to try and get money back. In fact, the district court found that his prosecution for, as it's been characterized as extortion, that prosecution underlies any indication that the sole motive was to assist law enforcement. So Hayhurst did, yes, he did seek a reward at the time, on April 17th, when he turned the documents over. So what you're saying is that that's evidence that should properly be considered on the issue of government acquiescence, but the court resolved the issue against the defendant on that. That's correct. It was one factor that the court could take into account as to the motive of the private citizen in acquiring the documents. I think the most significant thing is that the court conducted an extensive inquiry, document by document, of both Hayhurst and Muir, as to what the document was and where they got it. And the court made the determination that there was no indication that those documents, and it was phrased in a generic sense, but it was to the extent that those documents were acquired by Mr. Muir and Mr. Hayhurst, either in the course of the employment, in the case of Mr. Muir, collecting rents for the defendant, or the business association that Hayhurst apparently had with the defendant at one time, or the seminar that Hayhurst attended, put on by the defendant, at which he got the seminar books, which were the bulk of the materials, turned over after April 17th of 2000. Counsel? Yes, Your Honor. Did the government pay a reward? There's no indication in the record, and there was no evidence at the time of the suppression hearing, that any reward was ever paid. So we don't know. We don't know, Your Honor. Okay. Unless the panel has any other further questions, we would submit it then on the briefing. There don't appear to be any additional questions. Thank you for your argument. Thank you. The government response as to whether or not they knew if the documents were stolen or not seems to be going to the fox who's raided the chicken house and saying, hey, did you go into the chicken house, asking Mr. Hayhurst whether he stole the documents by Agent Campbell in April of 2000, and then accepting his word for it when they knew, either then or shortly thereafter, that Mr. Hayhurst had been questioned by the police three months earlier about the theft, that there was a police report in which he was listed as the suspect. He was eventually charged with the theft. Did he ever admit, did Hayhurst ever admit to taking the documents from the appellant's residence? Yes, he did. It's at the reporter's transcripts of the hearing of February the 26th, pages 12 and 13, where he had helped himself to the documents. He admitted that he took the documents. So for the agents or the district court to come to the conclusion that he didn't steal the documents is belied by the record and is totally ridiculous. He admitted he took the documents. Well, admitting you took them and admitting you stole them are two different things, though. I'm just asking to be, you know, that's your argument, but did he admit stealing them? He admit taking them, right? He admits taking them. Okay. All right. I don't know if you. I realize if my children were saying that to me, it would be semantics. Exactly. I mean, that's the semantics of this case. You're parsing out, well, I took the documents, you know, from the appellant. It was a theft. And I don't know how the district court could possibly come to the conclusion that there wasn't a theft in this case. And if you've taken, if you do believe there was a theft, then the district court's opinion is completely not supported by the record. And the government knew before they looked at the documents. He had told the FBI in December of 1999 that he had taken the documents, quote, unquote. And then. Counsel, I'd like you to circle back to the question, is there anything wrong with the government using stolen documents that it did not steal? Certainly there's no Fourth Amendment violation here. Okay. There's nothing wrong if you turn in documents that you have stolen right to the government at the time you steal them. Then I don't think there's anything wrong. However, if you say I have stolen documents and then the government continues to say, well, in essence, like the Walter case that is cited in the brief, we'll go back and look at those documents and, you know, over a period of time continually turn them in to the government like it did in this case. Because between April of 2000 and up through 2002, there was a slow influx of documents. Then I think there is something wrong. And that's the acquiescence argument. In other words, you know, I think it would be totally wrong for the government to be aware that there's a theft taking place and then encourage the use of the documents by telling the person that's stealing the documents, okay, well, you can turn them in over a period of time. But, counsel, excuse me. When you say that there's been a period of time, the fact that the FBI did not accept those documents at first and said if you wish to utilize them, reduce it to writing and take it someplace else, how is that a continual pattern of acquiescence from the moment the documents were provided to the governmental entity? It seems like there's been a cutoff at that point in time that it's not this continual pattern that you're referring to. Isn't that correct? Well, I think that if you know a theft has taken place and you're a government police officer, so to speak, and you don't do anything to turn that person in or contact the local authority, don't you think that's the kind of police contact conduct we want to discourage? And if you can say to the FBI, well, I've stolen documents, and the FBI says, fine, we don't really care, go to another agency and do nothing about investigating that crime, aren't we encouraging the kind of police contact? Well, it might be a little bit different had the owner of the home contacted law enforcement or the FBI and said I've had documents that have been stolen from my home. He did. He filed a police report on December the 21st, the day the documents were stolen. There was a police report in existence. So when Olivia was told that there was a theft, all he had to do was check the records and he knew there was a theft. I don't think we can encourage the police in a situation like this when they're told that the documents were stolen. All right. But you have to distinguish between how you want the police to do their work and government acquiescence. Those are, you know. I understand, and I would make the argument that there is government acquiescence when there are no other documents that have been stolen. They do nothing to investigate the crime. They do nothing to turn the person in. They know there's an arrest warrant, et cetera, et cetera, et cetera. And they say, well, go to the IRS and let them deal with it. Let them use these stolen documents. I'll submit the matter. All right. Thank you both for your arguments. The matter will now stand submitted.
judges: B. Fletcher, Callahan, England